# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| TRANICE THOMAS, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| | 5:20-cv-00455 |
| ALL CARE HOME HEALTH, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Tranice Thomas and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Plaintiff alleges that Defendant All Care Home Health, LLC subjected her to harassment based on sex and retaliation after she engaged in protected activities and failed to pay her overtime, showing the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2.

Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because Plaintiff was employed and the events underlying this action occurred in Macon-Bibb County, Georgia, which is located in this judicial district.

## PARTIES

3.

Plaintiff Tranice Thomas (hereinafter, "Plaintiff" or "Thomas") is a citizen of the United States and a resident of Georgia. At all times relevant to this suit, Ms. Thomas was employed with Defendant All Care Home Health, LLC.

4.

At all relevant times, Ms. Thomas was considered a covered, non-exempt employee under Title VII of the Civil Rights Act and the Fair Labor Standards Act.

5.

Defendant All Care Home Health, LLC (hereinafter, "Defendant") is a domestic limited liability company, organized under the laws of the State of Georgia.

6.

Defendant's principal office address is 5797 Houston Road, Suite F, Macon, Bibb County, Georgia 31216, and Defendant may be served with process through its registered agent, Allen G. Freeman at 5797 Houston Road, Suite F, Macon, Bibb County, Georgia 31216.

7.

Defendant is a private employer engaged in interstate commerce, with annual revenue in excess of $500,000. Defendant has more than fifteen employees who have worked for at least twenty calendar weeks in 2020 and proceeding years. Defendant provides in-home care services to the elderly and adults with developmental disabilities in their homes and several residential facilities throughout Middle Georgia.

8.

Defendant is a covered entity and employer within the meaning of Title VII of the Civil Rights Act and a covered enterprise within the meaning of the Fair Labor Standards Act.

## STATEMENT OF FACTS

9.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 8, as if the same were set forth herein.

10.

Ms. Thomas began her employment with Defendant in February 2019, where she worked as a caregiver or "Personal Care Assistant."

11.

As a Personal Care Assistant, almost all of Ms. Thomas' duties were the provision of care for adults with developmental disabilities such as assisting such persons with Activities of Daily Living.

12.

Specifically, Ms. Thomas would assist residents with Activities of Daily Living like dressing, grooming, feeding, bating, and toileting.

13.

According to Defendant's Employee Handbook, hourly workers are eligible for overtime.

14.

Defendant requires its employees to sign an agreement, providing that employees were permitted to work in excess of 40 hours per work week, but would be paid at a rate less than their regular hourly rate for all such overtime.

15.

Ms. Thomas never signed any agreement regarding overtime pay.

16.

Ms. Thomas was compensated on an hourly basis at the rate of $9.00 per hour.

17.

From the beginning of her employment in February 2019, Ms. Thomas frequently worked in excess of 40 hours per work week.

18.

In work weeks where Ms. Thomas worked in excess of 40 hours, she was paid at a rate of $8.00 per hour for any hours over 40.

19.

From February 2019 through May 2019, there was nothing unusual about Ms. Thomas' work environment, and her performance was exemplary.

20.

In May 2019, Defendant hired Michael Ponder (hereinafter, "House Manager Ponder") as a House Manager for the same residential facility in which Ms. Thomas was most often assigned.

21.

As a result of House Manager Ponder's assignment, he became Ms. Thomas' direct supervisor.

22.

House Manager Ponder immediately began exhibiting inappropriate behavior toward Ms. Thomas on a frequent and daily basis throughout the months of May and June 2019.

23.

This behavior included when House Manager Ponder would make sexually suggestive looks toward Ms. Thomas, including several occasions when he made eye contact with Ms. Thomas and then moved his tongue across his lips in a sexual manner. On other occasions, House Manager Ponder would wink at Ms. Thomas.

24.

On June 12, 2019, Ms. Thomas was working with one of the residents when she turned around and caught House Manager Ponder clearly staring in the direction of her buttocks. When the two individuals made eye contact, House Manager Ponder proceeded to wink his eye.

25.

On June 30, 2019 at approximately 10:00 pm, House Manager Ponder contacted Ms. Thomas through a private message on Ms. Thomas' account on a social media platform. The first message was simply an image of a hand waiving and the second message was text reading, "Sorry.. I didn't mean to waive at you!"

26.

Even assuming that House Manager Ponder's first message was indeed unintentional, he was not "friends" with Ms. Thomas on the social media platform, suggesting that he had been viewing Ms. Thomas' social media page when he inadvertently sent the message.

27.

This communication was unwelcomed by Ms. Thomas, and, as a result, she did not respond to the messages.

28.

In July 2019, House Manager Ponder began to send text messages to Ms. Thomas' mobile phone that were clearly unrelated to work.

29.

For example, on the evening of July 2, 2019, House Manager Ponder sent a text message asking "Wyd," which is a common text message initialism meaning "what're you doing?"

30.

For the response that she sent to July 2nd message, House Manager Ponder clearly understood that Ms. Thomas did not wish to engage in a discussion about non-work matters. Still, he responded, "How was your day off? Lol why I have to need something to text? Maybe I wanted to say hi."

31.

On July 3, 2019, Ms. Thomas submitted a request for a personal day off to House Manager Ponder. House Manager Ponder asked Ms. Thomas the reason she was asking for personal time off and then suggested that, instead, he could take her for a picnic and cook for Ms. Thomas.

32.

Based on the aforementioned picnic comment, it became abundantly clear to Ms. Thomas that her supervisor was making sexual advances toward her. As such, Ms. Thomas responded saying that this conduct was inappropriate because House Manager Ponder was married and was also Ms. Thomas' supervisor.

33.

The House Manager responded to Ms. Thomas' objection, stating that there was "nothing wrong with two friends getting out and enjoying each other." Ms. Thomas also perceived this

comment as sexually suggestive.

34.

In addition to frequent messages, House Manager Ponder would call Ms. Thomas. On one occasion, Ms. Thomas was working an over-night shift when she received the call. When she tried to end the conversation, the House Manager responded that they had "plenty of time to talk" because it was an over-night shift with little to do.

35.

Around this same time, Ms. Thomas learned that the House Manager had told several other employees that Ms. Thomas was his "favorite."

36.

Another male coworker of Ms. Thomas told her that, based on the House Manager's conduct and behavior, it appeared that the House Manager was attracted to and liked Ms. Thomas.

37.

Ms. Thomas became aware of allegations that the House Manager had displayed similar behavior to several other female employees, both during his employment with Defendant and his prior employer.

38.

Ms. Thomas also became aware of another situation in which House Manager Ponder offered to pay out of pocket for manicures and hair styling for another employee, and even invited the same coworker to the House Manager's home. This female coworker was a minor at the time.

39.

Defendant had received several other complaints from its female employees about the House Manager's sexual harassment, but it failed to take any action.

40.

The House Manager did not exhibit any similar conduct of a sexual nature toward Defendant's male employees.

41.

Although Ms. Thomas had previously resisted the House Manager's sexual advances and harassment, she attempted to make her rejections as clear as possible in early July 2019. From this point, the House Manager's conduct toward Ms. Thomas changed to being overtly hostile in nature.

42.

For example, on several occasions soon thereafter, the House Manager began to target Ms. Thomas by reducing the hours that he was scheduling her to work, and he even reassigned several shifts that Ms. Thomas had been assigned.

43.

The House Manager also began threatening Ms. Thomas with disciplinary action.

44.

On July 21, 2019, Ms. Thomas felt as though she could no longer tolerate House Manager Ponder's treatment of her, and she asked to be transferred to a different facility with another manager.  Ms. Thomas' requests were denied.

45.

On July 24, 2019, the House Manager caused Ms. Thomas to become upset when he observed Ms. Thomas speaking on the telephone about work assignments and then demanded to know to whom she was speaking.  Ms. Thomas responded by telling the House Manager that, just like with his prior employment, his conduct would result in Defendant terminating him as well.

46.

After the July 24th incident, House Manager Ponder sent Ms. Thomas home, reassigned her scheduled shifts, and issued her a written warning.

47.

On the morning of Friday, July 26, 2019, Ms. Thomas met with Defendant's Vice President, Richard Jacobs, and Ms. Thomas described how House Manager Ponder had made sexual advances toward her and then took away hours when she resisted him.

48.

Ms. Thomas also reported House Manager Ponder's conduct toward her underaged, female coworker.

49.

The Vice President's only reaction or response to Ms. Thomas' complaints of harassment was that he would talk to House Manager Ponder and let him know that he had made Ms. Thomas feel "uncomfortable." In response, Ms. Thomas explained how this behavior had gone beyond making her uncomfortable, but was instead entirely inappropriate for the workplace.

50.

The Vice President acknowledges that Ms. Thomas reported the sexual harassment to him in the July 26th conversation. He has also stated that he simply suggested that Ms. Thomas reach out to the Human Resources Manager on Monday, July 29, 2019 when he returned to the office.

51.

Ms. Thomas disputes that the Vice President referred her to the Human Resources Manager.

52.

Even if the Vice President's account were true, this would have violated Defendant's policies, which would have required the complaints to be brought immediately to the Human Resources office by the Vice President.

53.

On the morning of Monday, July 29, 2020, Ms. Thomas attempted to contact Defendant's Chief Executive Officer via telephone to inform him of the harassment and retaliation. She was told that the Chief Executive Officer was not in his office.

54.

On the morning of Monday, July 29, 2020, Ms. Thomas attempted to contact Defendant's Vice President via telephone to follow up about her complaint. He neither answered nor returned the call.

55.

On the morning of Monday, July 29, 2020, Ms. Thomas also attempted to contact Defendant's Human Resources Manager via telephone to speak with him about the harassment and retaliation, but she was unable to connect with him.

56.

Instead, on July 29, 2020, the Human Resources Manager made the decision to terminate Ms. Thomas for violating Defendant's policy when she contacted a supervisor on Friday at 8:08 pm to "call-out" for a shift that she had been scheduled to work on Saturday at 10:00 am.

57.

Defendant's stated reason was not the real reason for its termination of Ms. Thomas.

58.

Ms. Thomas was terminated for her opposition to the harassment that she had experienced from her supervisor.

59.

According to Defendant's policies, effective on May 17, 2019, an employee must contact their supervisor no less than four (4) hours prior to the beginning of a scheduled shift in order to be excused.

60.

Ms. Thomas contacted her supervisor approximately fourteen (14) hours before the scheduled shift.

Procedural/Administrative Background

61.

On or about December 17, 2019, Ms. Thomas submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC") (Charge No. 410-2020-02165).

62.

On September 8, 2020, Ms. Thomas received a Dismissal and Notice of Rights from the EEOC, which was dated September 3, 2020 and postmarked on September 5, 2020.

**COUNT I:**
**HARASSMENT BASED ON SEX**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

63.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 63, as if the same were set forth herein.

64.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of sex. *See* 42 U.S.C. § 2000e-2(a).

65.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively. *See* 42 U.S.C. §§ 2000e & 2000e-1.

66.

As alleged herein, Defendant, through the conduct of its employee Michael Ponder, (a) subjected Plaintiff to harassment in the form of unwelcome verbal and physical conduct involving and because of her sex, (b) the harassment affected a term or condition of Plaintiff's employment and had the purpose and effect of unreasonably interfering with the work environment and created an intimidating, hostile, and offensive work environment, (c) not only was Plaintiff's direct supervisor responsible for the harassment, Defendant was on notice of this conduct and did nothing to prevent it from occurring.

67.

The harassment experienced by Plaintiff was severe, pervasive, abusive, hostile, and unwelcome by Plaintiff and occurred because of her sex.

68.

Defendant's conduct as alleged herein constitutes harassment and hostile work environment based on sex in violation of Title VII.

69.

Plaintiff has been injured by Defendant's harassment of her based on her sex, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, front pay and injunctive relief, compensatory and punitive damages at the statutory limit, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT II:
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

70.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 63, as if the same were set forth herein.

71.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees because an employee has opposed any practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).

72.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively, *See* 42 U.S.C. §§ 2000e & 2000e-1.

73.

During her employment with Defendant, Plaintiff's supervisor subjected Plaintiff to sexually-based conduct that was both severe and pervasive enough to change the working conductions and unwelcomed by Plaintiff.

74.

During her employment with Defendant, Plaintiff both observed and learned of her supervisor subjecting other employees to sexually-based conduct that was both severe and pervasive enough to change the working conductions and unwelcomed by the other employees.

75.

Plaintiff had a reasonable, good faith belief that her supervisor's conduct was actionable sexual harassment.

76.

Plaintiff's supervisor's conduct toward her and others was actionable sexual harassment.

77.

Plaintiff opposed her supervisor's conduct by requesting that the supervisor cease the behavior.

78.

Plaintiff opposed her supervisor's conduct by reporting the conduct to an individual in management.

79.

An employee who complains about the type of harassment alleged is opposing a practice made unlawful by Title VII of the Civil Rights Act and is, therefore, engaged in a "protected activity."

80.

After Plaintiff opposed the harassment, she was subjected to materially adverse actions from the same supervisor, such as being subjected to additional harassment, having her working

hours reduced, and being subjected to disciplinary actions that had been fabricated by said supervisor.

81.

As alleged herein, the aforementioned adverse actions only began after Plaintiff opposed her supervisor's harassment. For this reason, amongst others, these adverse actions only occurred because of Plaintiff's participation in protected activities.

82.

Three days after Plaintiff reported her supervisor's harassment to management, she was terminated.

83.

Defendant's conduct, as alleged, herein constitutes retaliation in violation of Title VII of the Civil Rights Act.

84.

Defendant is unable to articulate any legitimate, nondiscriminatory or nonretaliatory reason for the conduct and Plaintiff will provide that Defendant's stated reason for her termination was merely pretextual for Defendant's retaliatory animus.

85.

Plaintiff has been injured by Defendant's retaliation of her, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, front pay and injunctive relief, compensatory and punitive damages at the statutory limit, and reasonable attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT III:
## FAILURE TO PAY OVERTIME PAY
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

86.

Plaintiff hereby pleads and incorporates by reference all of the allegations set forth in the Statement of Facts, Paragraphs 1 through 63, as if the same were set forth herein.

87.

Under the Fair Labor Standards Act, an employer must pay a rate of not less than one and one-half times an employee's regular rate for any time worked in excess of forty hours for any given workweek.  *See* 29 U.S.C. § 201(a)(1).

88.

As alleged herein, Defendant and Plaintiff are covered, non-exempt employer and employee under the Fair Labor Standards act, respectively.  *See* 29 U.S.C. § 201(a)(1).

89.

As alleged herein, from February 2019 through her termination in July 2019, Plaintiff frequently worked in excess of forty hours per work week.

90.

While Plaintiff was compensated for such hours worked over forty, she was compensated at a rate that was one dollar ($1.00) less than her normal hourly rate.

91.

Defendant's conduct, as alleged herein, constitutes withholding and/or failing to provide overtime pay in violation of the Fair Labor Standards Act.

92.

Plaintiff has been injured by Defendant's actions and is entitled to an award of unpaid overtime compensation and all other damages allowed under the Fair Labor Standards Act, as well as reasonable attorney's fees and costs of litigation to be paid by Defendant pursuant to 29 U.S.C. § 216(b), in an amount to be proven at trial.

93.

As alleged herein, Defendant generally requires its employees to sign an agreement, which purports to consent to the employee accepting overtime pay that is less than the employee's standard rate.

94.

This conduct suggests that Defendant has acted in bad faith and knew its actions were a violation of the Fair Labor Standards Act, or otherwise that it did not have reasonable grounds to be that its actions were not a violation of the Fair Labor Standards Act.

95.

This Court should exercise its sound discretion to award liquidated damages pursuant to 29 U.S.C. § 260, and should award to Plaintiff said liquidated damages in an amount equal to an award for unpaid overtime compensation.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tranice Thomas respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant All Care Home Health, LLC, and that said Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for harassment based on sex in violation of Title VII of the Civil Rights Act, and grant Plaintiff all relief allowable under said law;

4) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for retaliation for engaging in protected activities in violation of Title VII of the Civil Rights Act, and grant Plaintiff all relief allowable under said law;

5) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for failure to pay overtime compensation in violation of the Fair Labor Standards Act, and grant Plaintiff all relief allowable under said law, including liquidated damages;

6) For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 2nd day of December, 2020.

KENNETH E. BARTON III
Georgia Bar No. 301171
MISHAEL K. NAJM
Georgia Bar No. 747961
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mkn@cooperbarton.com